IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON, | No. 78751-9-I |
| Respondent,<br><br>v.<br><br>ABDIMJIDO OMAR,<br><br>Appellant. | DIVISION ONE<br><br>PUBLISHED OPINION<br><br>FILED: March 23, 2020 |

CHUN, J. — The State charged Abdimjido Omar with first degree robbery. During jury selection, Omar exercised a peremptory challenge against a potential juror (Juror 16) who claimed to have once been present at a bank robbery while working there. Since Juror 16 appeared to be of Asian descent, the trial court applied GR 37 and apparently asked Omar to provide a race-neutral reason for the challenge. Through counsel, Omar asserted only that he "didn't like some of the responses" that the juror gave to questioning, and that he "felt uncomfortable about the way she was responding." The trial court denied Omar's challenge and seated Juror 16. The jury convicted Omar as charged. Omar appeals. Because an objective observer could view race as a factor in the use of the challenge, we affirm.

## I. BACKGROUND

On October 3, 2017, the State charged Omar with first degree robbery. During voir dire, in response to a question from the trial court regarding her

experience with incidents similar to robbery, Juror 16 shared that she had previously worked at a bank, and that a person robbed the bank while she was working there. When asked if this experience would affect her ability to be a fair juror, she responded, "I don't know . . . I've never been in this situation, so I'm not sure." Omar did not follow up with any questioning of Juror 16 on this topic. Omar did ask Juror 16 what she first noticed when she walked into the courtroom, but again, did not ask her follow up questions. Juror 16 appeared to be of Asian descent.

Omar exercised a peremptory challenge against Juror 16. Because she appeared to be of Asian descent, the court applied GR 37 and apparently requested Omar to provide a race-neutral purpose for removing Juror 16 from the pool.[1] In response, Omar—through counsel—asserted that he "just didn't like some of the responses that [Juror 16] was giving to some of the questions. He felt uncomfortable about the way that she was responding and he felt he would feel uncomfortable having her on his jury in this case. It has nothing to do with race." Omar further noted that prospective juror 1 also appeared to be of Asian descent but he did not use a peremptory challenge against her.

In response, the State noted that Juror 16 had said she would focus on the facts of the case, not on race; that she never made any statements that "gave

---

[1] The record does not show the trial court requesting a race-neutral purpose for removing Juror 16. However, the parties and trial court engaged in a number of off-the-record discussions around the time Omar challenged Juror 16, and statements made by Omar's counsel immediately following such clearly endeavor to establish a race-neutral purpose for the challenge.

any concern about her ability to be fair," and that she did not mention any law enforcement connections. The State additionally characterized Omar's reasons for using the challenge as excessively vague.

The trial court concluded that an objective observer could view Juror 16's race as a factor in the use of the peremptory challenge because Omar had given a "complete lack of reasons" for her removal. The trial court further noted that none of Juror 16's responses were controversial or reflected bias one way or another, that she had indicated she was excited about jury duty, and that she had said a person's color would not affect her thinking. The court also stated that Juror 16 had indicated that her experience being present at a robbery "would not affect her."[2] The court denied Omar's challenge.

The jury convicted Omar of robbery in the first degree. Omar appeals.

## II. ANALYSIS

Omar argues the trial court should have granted his peremptory challenge against Juror 16. The State argues that the trial court properly denied the challenge because an objective observer could conclude that race influenced the challenge. We agree with the State.

### A. Standard of Review

Omar argues that we must review de novo the trial court's denial of his peremptory challenge. The State argues that, while we review de novo the trial

---

[2] Contrary to the trial court's characterization, Juror 16 actually indicated that she did not know how her experience would affect her ability to be a fair juror, since she had never been in "this situation."

court's application of GR 37, we nevertheless must defer to the trial court's findings of fact on the subject. We conclude that the de novo standard applies here.

GR 37 provides no guidance as to an appellate court's standard of review. However, in State v. Jefferson, our Supreme Court held that an appellate court that reviews whether an objective observer could view race as a factor in the use of a peremptory challenge "stand[s] in the same position as does the trial court, and [] review[s] [de novo] the record and the trial court's conclusions." 192 Wn.2d 225, 249–50, 429 P.3d 467 (2018).[3] The State argues that Jefferson does not apply because the trial court there made no findings on the "totality of the circumstances," and "those issues do not appear to have been raised on appeal." But Jefferson specifically states that, in this analysis, the appellate court reviews de novo the record, distinguishing it from the previous Batson analysis that applied a "deferential, 'clearly erroneous' standard of review of the purely factual conclusion about 'purposeful discrimination.'" 192 Wn.2d at 250.[4] Thus, we review de novo the trial court's application of GR 37.[5]

_____

[3] In Jefferson, our Supreme Court altered Washington's analysis of whether a party used a peremptory challenge in a racially discriminatory manner under Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). 192 Wn.2d at 249. Specifically, it modified the third prong of the analysis (i.e., whether a party has established purposeful discrimination) to match that of the test in GR 37 (i.e., whether an objective observer could view race or ethnicity as a factor in the use of the peremptory challenge). Jefferson, 192 Wn.2d at 249.

[4] In any event, the State identifies no trial court findings to which this court should defer.

[5] The State correctly notes that the application of de novo review to GR 37 decisions departs from other, similar standards of review. See, e.g., Uttecht v. Brown,

4

B. Challenge to Juror 16

Omar argues the trial court improperly denied his peremptory challenge against Juror 16. The State disagrees. Because an objective observer could conclude that race was a factor in the use of the challenge, we determine the trial court properly denied it.

Under GR 37, a party or the court "may object to the use of a peremptory challenge to raise the issue of improper bias." GR 37(c). Upon such an objection, the party exercising the challenge must "articulate the reasons the peremptory challenge has been exercised." GR 37(d). The court evaluates those reasons in light of the totality of the circumstances, and if "an objective observer *could* view race or ethnicity as a factor in the use of the peremptory challenge, then the peremptory challenge shall be denied." GR 37(e) (emphasis added). "[A]n objective observer is aware that implicit, institutional, and unconscious biases, in addition to purposeful discrimination, have resulted in the unfair exclusion of potential jurors in Washington." GR 37(f).

When a court evaluates the reasons articulated by the party exercising a peremptory challenge and decides whether an objective observer could view

---

551 U.S. 1, 9–10, 127 S. Ct. 2218, 2224, 167 L. Ed. 2d 1014 (2007) (concluding that appellate courts owe deference to a trial court's determination of a juror's demeanor); State v. Noltie, 116 Wn.2d 831, 838, 809 P.2d 190 (1991) (reviewing denial of a challenge for cause for manifest abuse of discretion, since the trial court is in the best position to observe the juror's demeanor and responses). However, the language of Jefferson binds us here.

race or ethnicity as a factor in the challenge, it must consider the reasons in light of the totality of the circumstances. GR 37(e). The rule provides:

> In making its determination, the circumstances the court should consider include, but are not limited to, the following:
>
> (i) the number and types of questions posed to the prospective juror, which may include consideration of whether the party exercising the peremptory challenge failed to question the prospective juror about the alleged concern or the types of questions asked about it;
>
> (ii) whether the party exercising the peremptory challenge asked significantly more questions or different questions of the potential juror against whom the peremptory challenge was used in contrast to other jurors;
>
> (iii) whether other prospective jurors provided similar answers but were not the subject of a peremptory challenge by that party;
>
> (iv) whether a reason might be disproportionately associated with a race or ethnicity; and
>
> (v) whether the party has used peremptory challenges disproportionately against a given race or ethnicity, in the present case or in past cases.

GR 37(g). "[A]llegations that the prospective juror was sleeping, inattentive, or staring or failing to make eye contact; exhibited a problematic attitude, body language, or demeanor; or provided unintelligent or confused answers" have historically been associated with improper discrimination in juror selection, and the trial court should not accept them as reasons for a challenge unless opposing counsel or the court itself can corroborate the allegations. GR 37(i).

Here, in response to the trial court's apparent request for a race-neutral reason for the challenge, Omar asserted merely that he "just didn't like some of the responses that [Juror 16] was giving to some of the questions," and "felt

uncomfortable about the way that she was responding and he felt he would feel uncomfortable having her on his jury in this case."

Omar's articulated reasons ring nearly tantamount to a characterization of Juror 16's demeanor; and, as noted above, GR 37(i) cautions that such a characterization has historically been associated with improper discrimination in juror selection. On appeal, Omar argues that we should interpret his articulated reasons in light of the fact that Juror 16 indicated she had previously been present at a bank robbery; but during jury selection, Omar did not articulate such as a basis for his challenge. Further, Jefferson warns of nebulous justifications for peremptory strikes, since such justifications may serve to mask a party's conscious or unconscious racism. 192 Wn.2d at 251 (citing Batson, 476 U.S. at 106 (Marshall, J., concurring). To be sure, Omar's statements that he "just didn't like some of [Juror 16's] responses" and that "he felt uncomfortable about the way that she was responding" sound, at best, nebulous.

Since Omar effectively provided no reasons for the peremptory challenge, and factors (iii) and (iv) require analysis of reasons a party provides in support of their challenge, we examine only factors (i), (ii), and (v).

As to factor (i), Omar asked Juror 16 only what she noticed upon arriving in the courtroom; Juror 16 responded that she had attempted to figure out who all the individuals in the courtroom were upon her entry. Since the proffered reason for the challenge was only that Omar did not like her responses, it is difficult to

say whether Omar asked Juror 16 about his alleged concerns. However, on appeal, Omar argues that his concern with Juror 16 was that she had been present at a bank robbery, and that she "was not sure she could be fair." Omar did not ask Juror 16 any follow-up questions about these matters. But because we weigh only the reasons Omar gave to the trial court in support of his challenge, this factor does not weigh against him.

Turning to factor (ii), Omar also asked a number of other prospective jurors what they noticed when they first came into the courtroom. Juror 16's responses were similar to theirs. Omar also did not ask any of the other jurors who indicated they had experiences with similar crimes to explain further.[6] Since Omar did not ask Juror 16 more or different questions than he asked of other jurors, factor (ii) does not weigh against him.

Nothing in the record suggests that Omar or his attorneys have a history of misusing peremptory challenges. Here, Omar notes that he did not exercise a peremptory challenge against a different potential juror who appeared to be of Asian descent. Factor (v) does not weigh against Omar.

While the foregoing factors do not weigh against Omar's use of the challenge, the reasons he provided for challenging Juror 16 remain nebulous and they fail to identify specific problems with her responses. Both Jefferson and

---

[6] Prospective juror 22 indicated that their parents' home had been burglarized and that the perpetrator stole some of their personal information. This juror stated that the experience would "possibly[,] [p]ossibly not" influence his ability to be a fair juror. Omar also did not ask prospective juror 22 any additional questions about this experience; and he did not exercise a peremptory challenge against this juror.

GR 37(f) discourage acceptance of such vague and unsubstantiated reasons on the basis that they might mask conscious or unconscious bias. 192 Wn.2d at 251. The trial court did mischaracterize Juror 16's statement that she did not know how her robbery experience would affect her ability to act as a fair juror, but this court reviews de novo Omar's reasons for the challenge. Because these offered reasons were nebulous, an objective observer could view race as a factor in the challenge. The trial court properly denied Omar's challenge against Juror 16.

Affirmed.

_Chun, J._

WE CONCUR:

_Hazelrigg, J._          _Leach, J._

9