IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 80244-5-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MARK EDWARD PIELER, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — Mark E. Pieler seeks reversal of his conviction for felony physical control of a vehicle while under the influence. He argues that the trial court erred in allowing the State to use peremptory challenges to dismiss two jurors of color based on reasons presumptively invalid under GR 37. Because the record does not show that the jurors were dismissed for presumptively invalid reasons, that the jurors were treated differently from the rest of the jury pool, or disproportionate use of peremptory strikes against a given race or ethnicity, we affirm.

## FACTS

On August 18, 2018, Officer Lacey Del Valle of the Renton Police Department responded to a 911 call reporting that a red pickup truck had made a wide turn into oncoming traffic. The caller described the driver as a white man in

his forties to fifties and indicated that the driver was swaying in the cab of the truck. Del Valle was not able to locate the truck.

About 30 minutes later, Officer Jeanna Christiansen responded to a call for a welfare check in a Wal-Mart parking lot. She found Mark Pieler sitting in the driver's seat of a red, older model pickup truck. The driver's side window was open and Christiansen noted "a very extreme odor of intoxicants" coming from the cab of the vehicle as she approached. Pieler's eyes were extremely bloodshot and glassy, his eyelids were droopy, and his speech was slurred. Christiansen placed Pieler under arrest on suspicion of driving under the influence (DUI) and noticed a 750 milliliter bottle of rum in the center console of the truck that was approximately three-quarters empty. Del Valle also responded to the scene and noted that Pieler matched the description of the driver from the earlier traffic complaint. A blood draw showed that Pieler's blood alcohol concentration was .26 grams per 100 milliliters.

Pieler was charged with felony DUI, reckless driving, and felony physical control while under the influence. During voir dire, the prosecutor described the charge of physical control as "like a DUI without the driving component of it" and explained that "if you are impaired and sitting in a car, potentially that could be a crime." When asked if they could follow the law as given in jury instructions despite any disagreement that they might have with the law, Jurors 17 and 19 agreed that they would be able to follow the law. Juror 55 indicated that she thought the charge was unfair:

> [PROSECUTOR]: Okay. Anyone have any disagreement with what juror number 19 or juror number 17 were indicating?

Yes, juror number 55.

JUROR: I have a family member that was—has been (inaudible). And they approached the car, got in, turned the car on, but never left where they were. But they were found asleep with the car running. And—

[PROSECUTOR]: Was that—

JUROR: —I don't necessarily think it was fair to get charged with something (inaudible).

[PROSECUTOR]: Did they actually get charged with a crime in that situation?

JUROR: They were given some stipulations to follow, but there was additional things as well. But that was one of them, yeah.

The defense raised GR 37 objections to the State's use of peremptory challenges against three jurors. The State was concerned that Juror 17 "might not be a good fit for this jury, given their age and their admission that they . . . do not consume alcohol" because the case concerned the effects of alcohol on the body. Defense counsel argued that there were "three 18-year-olds in the row" who "all indicated that they didn't drink alcohol" but Juror 17 was the only person of color of the three, appearing to be "potentially East Asian or Indian." The court indicated that it had considered its notes from the juror questioning, the biographical information sheet, and the supplemental questionnaire. The court found "that there are non-biased reasons, as articulated by the State, in consideration of all of those answers[,] for the State to ask to have him struck" and denied the GR 37 challenge. The court thanked and excused Juror 17. The court later noted for the record that it did not know Juror 17's race or ethnicity and stated, "He may be a person of minority status or color, I can't tell."

Defense counsel also raised a GR 37 objection to the State's request to strike Juror 48. The State explained that its reason for using a peremptory challenge was that the juror had indicated that she did not understand "what .08

- 3 -

means, would mean for the legal standard." Defense counsel argued that this reason was presumptively invalid under GR 37(i). The court noted that Juror 48 appeared to be a person of African American descent. It agreed with defense counsel's argument and denied the State's request to strike Juror 48.

The State also requested to excuse Juror 55, who the court also considered to be an African American woman. Defense counsel raised a GR 37 objection. The State cited the juror's answer to the question of whether she knew someone who had been arrested for or accused of DUI. The State explained,

> [S]he did indicate that she did have a family member who was, you know, charged with physical control, and she indicated that she believed that that process wasn't fair, and the fact that someone could be charged for just sitting in their car, not physically going anywhere, driving anywhere.
> Given the nature of the charge in this case and the State's theory of this case, that is our basis for striking that individual based on, you know, her opinion of that particular charge with regards to how that process sorted out to someone who is close to her.

Defense counsel again argued that this explanation was presumptively invalid, citing GR 37(h)(iii), which concerns striking jurors because of a close relationship with people who have been stopped, arrested, or convicted of a crime. Defense counsel also argued that the juror had indicated that she could follow the law as written. The State responded that its concern was not that Juror 55 knew someone who had been charged with a crime generally but that "her reason that she gave for thinking it was unfair was the basis for the actual charge itself" of physical control.

The court explained that it saw a distinction between this objection and the objection to Juror 48 because Juror 55 "did specifically state that she thought it

- 4 -

was unfair in the way that it was charged." Although the court acknowledged that Juror 55 said that she could follow the law, in light of all the circumstances, it did not find a basis to deny the State's request to strike the juror. Juror 55 was thanked and excused.

The jury acquitted Pieler of felony DUI and reckless driving but found him guilty of the felony physical control charge. Pieler was sentenced to 15 months in prison plus 12 months community custody. He appealed.

ANALYSIS

Pieler contends that the trial court erred in allowing the State to use peremptory challenges to remove Jurors 17 and 55. He argues that the strikes ran afoul of GR 37.

Washington law prohibits racial discrimination in jury selection, whether through purposeful discrimination or as a result of implicit bias. GR 37(a); City of Seattle v. Erickson, 188 Wn.2d 721, 723, 398 P.3d 1124 (2017) (citing Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986)). The Washington Supreme Court adopted GR 37 in an effort to address the unfair exclusion of potential jurors due to implicit or unconscious bias, rather than purposeful discrimination. State v. Jefferson, 192 Wn.2d 225, 242–43, 429 P.3d 467 (2018). The rule allows a party to object to the use of a peremptory challenge to raise the issue of improper bias. GR 37(c). After the objection, the party exercising the peremptory challenge shall articulate its reasons for the challenge. GR 37(d). "The court shall then evaluate the reasons given to justify the peremptory challenge in light of the totality of circumstances." GR 37(e). The court shall deny

the peremptory challenge if it determines that an objective observer could view race or ethnicity as a factor in the use of the challenge. Id. For purposes of this analysis, the relevant objective observer "is aware that implicit, institutional, and unconscious biases, in addition to purposeful discrimination, have resulted in the unfair exclusion of potential jurors in Washington State." GR 37(f).

The question of whether the average reasonable person could view race as a factor in the use of a peremptory challenge is an objective inquiry. Jefferson, 192 Wn.2d at 249. Therefore, we review a trial court's application of GR 37 de novo. State v. Omar, 12 Wn. App. 2d 747, 751, 460 P.3d 225 (2020).

The rule lists examples of circumstances that the court should consider in making its determination, such as:

> (i) the number and types of Questions posed to the prospective juror, which may include consideration of whether the party exercising the peremptory challenge failed to Question the prospective juror about the alleged concern or the types of Questions asked about it;
> (ii) whether the party exercising the peremptory challenge asked significantly more Questions or different Questions of the potential juror against whom the peremptory challenge was used in contrast to other jurors;
> (iii) whether other prospective jurors provided similar answers but were not the subject of a peremptory challenge by that party;
> (iv) whether a reason might be disproportionately associated with a race or ethnicity; and
> (v) whether the party has used peremptory challenges disproportionately against a given race or ethnicity, in the present case or in past cases.

GR 37(g). The rule also lists the following reasons for peremptory challenges that are presumptively invalid because they have historically been associated with improper discrimination in jury selection:

> (i) having prior contact with law enforcement officers;

(ii)   expressing a distrust of law enforcement or a belief that law enforcement officers engage in racial profiling;
(iii)  having a close relationship with people who have been stopped, arrested, or convicted of a crime;
(iv)  living in a high-crime neighborhood;
(v)   having a child outside of marriage;
(vi)  receiving state benefits; and
(vii)  not being a native English speaker.

GR 37(h).  Reliance on certain conduct of the prospective juror such as perceived inattentiveness, problematic attitude, or confused answers is also associated with improper discrimination and should be viewed with caution.  GR 37(i).

Pieler first argues that the court erred in allowing the strike of Juror 55 because the State's reasons for excusing that juror were presumptively invalid under GR 37(h).  He contends that the State's challenge "based on her relationship with a 'family member' who had been arrested for physical control . . . is exactly the type of reason deemed invalid under GR 37(h)(iii)."  However, the State's reason for excluding Juror 55 was that she had a relative convicted of one of the precise crimes charged in the case and that she thought the charge was unfair.  This is a significant distinction from the more general contact with the police or the court system referenced in GR 37(h)(iii).

Pieler also argues that because Juror 55 did not respond affirmatively to the court's general inquiry as to whether any juror felt "uncomfortable about being able to follow the law" as a juror, the State's reason for excluding her was not supported by the record.  However, the prosecutor's discussion about the physical control charge did not occur until after this general question.  Also, Juror 55 indicated that she disagreed with two other jurors who had said that they would be able to follow

- 7 -

the law concerning physical control.  The court did not err in allowing the strike of Juror 55.

Pieler also contends that the court erred in allowing the strike of Juror 17. He argues that the prosecutor's stated reasons for the strike—that Juror 17 refrained from alcohol use and was too young to drink legally—were not unique to that juror and the State did not seek to strike other similarly situated jurors.  Pieler's trial counsel argued that there were two other 18-year-old jurors "in the row" and that Juror 17 was the only person of color of the three, but the other two jurors are not identified by number.  This appears to have been a reference to Jurors 14 and 20.  Although Pieler argues that Jurors 14 and 20 were also too young to drink legally and admitted refraining from alcohol use, the record before us does not contain the ages of these jurors.  After the jury panel was finalized, defense counsel noted on the record that the State struck "another one of the . . . 18-year-olds who was juror number 14, . . . and [the defense] struck juror number 20."

The State agreed with the court's restatement of its reason for striking Juror 17 as a concern "about whether or not this juror would be a good fit in light of the facts of this case and . . . the credibility of and the observations of people who have observed behaviors in that case."  The State correctly notes that most of the jurors who indicated that they refrained from alcohol consumption were excused for other reasons.  During general questioning, 24 prospective jurors indicated that they refrained from drinking alcoholic beverages.  Three of these jurors ultimately ended up serving on the jury.  However, the age of the potential jurors who did not drink could also be an important consideration because even those older jurors who did

not drink could have been better able to evaluate the credibility and observations of those who witnessed Pieler's behavior. Ultimately, the other potential jurors of comparable age and experience were also stricken from the venire. The record here does not show that an objective observer could have viewed race as a factor in this strike.

Finally, Pieler contends that the fact that half of the State's peremptory strikes were made against jurors of color shows that the challenges were disproportionately used against people of color. The State contends that the argument of disproportionality is "meaningless . . . without any record of the makeup of the initial venire, the jurors subsequently excused for hardship or for cause, the group that remained and was subject to peremptory challenges, or the jurors who were eventually empaneled." We do not read GR 37 to require a record of the race or ethnicity of every potential juror. However, even assuming that the three other jurors stricken by the State were white, the State's attempt to excuse one juror of potentially East or South Asian descent and two jurors of African American descent does not evidence a disproportionate use peremptory challenges "against a given race or ethnicity." GR 37(g)(v).

Affirmed.

WE CONCUR:

- 9 -