IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37416-5-III |
| | ) | (consolidated with |
| Respondent, | ) | No. 37417-3-III) |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| WARREN EUGENE MCCREA, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Warren McCrea appeals his convictions for two counts of failure to register as a sex offender. He raises two arguments, both related to GR 37(e)'s requirement that peremptory challenges be denied if "an objective observer could view race or ethnicity as a factor in the use of the peremptory challenge." The record supports McCrea's argument that at least two of the State's peremptory challenges violated GR 37. We, therefore, reverse McCrea's convictions and remand for a new trial.

FACTS

McCrea, who is Native American, is required to comply with Washington's sexual offender registration requirements. In 2019, the State charged McCrea with two counts of failure to register as a sex offender. The only facts necessary for disposition of this appeal relate to jury selection.

No. 37416-5-III; 37417-3-III
*State v. McCrea*


*Jury Selection*[1]

After general questioning, each party exercised seven peremptory challenges. The State's seven challenges, in order, were: venire juror 44, Ms. Bigwolf; venire juror 13, Ms. Vargas; venire juror 35, Mr. Rojas; venire juror 38, Mr. Overbeck; venire juror 49, Mr. Pascuzzi; venire juror 46, Mr. Castro; and venire juror 37, Mr. Sproule.

The court then called the attorneys into another courtroom and said:

I'm concerned 'cause of the exercise of peremptory challenges by the State in this matter.
    The first peremptory was Juror No. 44, [Ms.] Bigwolf, who's a Native American.
    Second peremptory, Juror No. 13, [Ms.] Vargas, Native American.
    The—third peremptory was [Mr.] Rojas, which I believed to be at least Hispanic or Spanish surname; that's peremptory No. 3.
    Peremptory No. 6 is [Mr.] Castro, also Hispanic surname, as such.
    The exercise, when we look at those, taking those jurors, particularly in 35, 44, 46, is of concern to the court because those people are not even in play.
    . . . .
    I'd like the—[prosecutor] to explain why [you] exercised these peremptories at that level, and the basis for the exclusion of [Ms.] Bigwolf—if you would, please.

Report of Proceedings (RP) at 124-25.

---

[1] To protect the privacy of the venire jurors, we refer to them by last name only and redact their first names from the attached addendum.

The prosecutor asked whether the court was making a *Batson*[2] challenge, to which the court answered, "the objection was not made by counsel on behalf of the defendant, and [GR 37] authorizes the court on its own to ask for an explanation or reasons justifying the peremptory challenge, given the totality of the circumstances." RP at 125. The court asked defense counsel why he had not raised any GR 37 challenges. Defense counsel replied, "We—we considered it, and strategically we chose not to, your Honor." RP at 125.

The court again asked the prosecutor to explain "why [he] did not exercise peremptories in some reasonable manner" and why he "particularly targeted, from the court's perspective, minorities." RP at 125. The following discussion ensued:

> [PROSECUTOR]: Starting with No. 35, [Mr.] Rojas, the state doesn't look at people['s] gender, race, or anything like. In fact [I don't] like the term "minority;" [I'm] a person of color. . . . [I] would never strike anyone based on their race.
> [Mr.] Rojas, in his jury summons . . . state[d], "Have you been convicted of a crime other than minor traffic violation." He checks the box "Yes." That is why [I] wanted to strike Mr. Rojas.
> THE COURT: So did you inquire as to what crime?
> [PROSECUTOR]: No. I don't think on the peremptory I'd need to. . . . No. 13, [Ms.] Vargas. I would not presume anyone is any race. Certainly wouldn't presume she's Native, with a Spanish last name. If I were to make any presumption I would have assumed she was of Spanish descent, possibly Caribbean, Dominican, Puerto Rican, Cuban,—
> THE COURT: Did you look at her?

---

[2] *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

> [PROSECUTOR]:  No, I don't—
> THE COURT:  I—
> [PROSECUTOR]:  —I don't look at—
> THE COURT:  I do—
> [PROSECUTOR]:  —color.
> THE COURT:  I have to.  I'm obligated as the court.
> [PROSECUTOR]:  I understand.
> THE COURT:  And that's why I'm raising this.

RP at 126-27.

The prosecutor then discussed his reason for exercising his first peremptory challenge on Ms. Bigwolf.  He said he had not tried a jury trial in front of the judge and did not know whether using a peremptory challenge would be construed as accepting everyone in front of the challenged juror.  He said he wanted jurors 1 through 12, "Which is why [I] started striking from the back, noticing that defense was striking from the front."  RP at 128.

The court responded:

> THE COURT:  Appears from the court's perspective that—challenges were basically wasted when the state exercised those peremptory challenges in the back.  It would appear to the court—even if the state had exercise[d]—those peremptory challenges sooner, —still would not have hit that back row, and/or even [venire jurors] 31 through 40.
> —The defense counsel concede that?
> [DEFENSE COUNSEL]:  Correct, your Honor. . . .
> . . . .
> THE COURT:  My concern, though, as an objective—I was concerned with the exercise of these peremptories at a different locality.

4

At this point does the defense still have any—GR 37 challenges. Because you waived them.

[DEFENSE COUNSEL]:  Your Honor, as I indicated, we—we considered a GR 37 challenge when the state used its second peremptory with respect to Juror No. 13.

THE COURT:  And, why did you consider that.

[DEFENSE COUNSEL]:  Because it appeared after the first peremptory by the state of Juror 44, that the state was essentially targeting—jurors of Native descent . . . .

. . . .

THE COURT:  Have you discussed that with your client.

[DEFENSE COUNSEL]:  I discussed with him earlier with respect to jury selection and—and he essentially left that to us.

THE COURT: —that correct, Mr. McCrea?

[McCREA]:  Yes.

RP at 129-30.

The court again raised its concern that the State's peremptory challenges targeted

Native Americans and Latinxs and again asked about venire juror 13, Ms. Vargas.

The prosecutor responded:

[THE PROSECUTOR]:  Once again, your Honor, [I] wasn't looking at race, gender, or anything.  She was in the second row—And if you see there I told you—wanted the first twelve.  She's 13.  She was the second strike.

THE COURT:  So it's just a numbers game with you—is that correct? —not based on your questioning?

[THE PROSECUTOR]:  The goal is to pick a fair and impartial jury. There's no tricks . . . .  There's many different factors used in assessing.  I felt, based on all the questioning, both by defense and the state, the first twelve would have been great for the state, as far as juror members.

So the state attempted to try to get those twelve.

5

RP at 131-32.

The court and defense counsel agreed that Ms. Vargas was within the first 12 jurors, given that two had earlier been excused for cause or hardship.[3]  The court told the prosecutor, "Doesn't make sense what you're saying."  RP at 132.

The court then remarked that Ms. Vargas had mentioned a memorial and said that it had considered striking her for cause but decided not to.  The prosecutor then claimed that Ms. Vargas's desire to attend the memorial was why he used a peremptory challenge on her.  The court said, "Given the fact that she—has a memorial, as such, or generally is pretty sensitive to cultural aspects, memorials, annual memorials are meaningful in the Native culture, as such, the court will grant the peremptory at this point.  Defense counsel has waived its objections on the record . . . ."  RP at 134.  The court granted all of the parties' peremptory challenges and empaneled the jury.

After the jury heard the evidence and arguments, it found McCrea guilty of both counts of failure to register as a sex offender.

---

[3] A list of all the venire jurors is attached as an addendum to this opinion. Those numbered 1 through 12 were jurors, and the one numbered 13 was an alternate juror.  Those crossed out without any additional designation were removed by the court for cause or hardship prior to the parties exercising their peremptory challenges.  Those crossed out with a "P" and number designation indicate the order that the State exercised its peremptory challenges.  Those crossed out with a "Δ" and number indicate the order that McCrea exercised his peremptory challenges.

McCrea appeals his convictions.

ANALYSIS

McCrea raises two arguments on appeal. He argues he is entitled to a new trial because the State caused jurors to be excluded in violation of GR 37. He alternatively argues he received ineffective assistance of counsel because trial counsel failed to object to the State's violations. We do not address his second argument because his first is dispositive.

GR 37 was adopted in 2018 "to eliminate the unfair exclusion of potential jurors based on race or ethnicity." GR 37(a). GR 37 employs a three-step approach. The first step requires a party or the court to object to a peremptory challenge and raise the issue of improper bias by citing GR 37. GR 37(c). This must be done before the challenged juror is excused. *Id.* A discussion then occurs outside the presence of the prospective jurors. *Id.* The second step requires the party exercising the peremptory challenge to articulate the reason or reasons justifying the exercise of the peremptory challenge. GR 37(d). The third step requires the court to evaluate the reason or reasons given to justify the peremptory challenge in light of the totality of the circumstances. "If the court determines that an objective observer could view race or ethnicity as a factor in the use of the peremptory challenge, then the peremptory challenge shall be denied." GR 37(e).

7

Although the court need not find purposeful discrimination, its inquiry is based on a

reasonable person "who is aware of the history of explicit race discrimination in America

and aware of how that impacts our current decision-making in nonexplicit, or implicit,

unstated, ways." *State v. Jefferson*, 192 Wn.2d 225, 250, 429 P.3d 467 (2018).

Here, the trial court followed the three-step approach and found that the State's

reasons for exercising its peremptory challenges did not make any sense. But it allowed

the State to exercise those challenges because it found that McCrea waived the rule.

The State does not ask us to affirm on the basis that McCrea waived the rule.

Rather, it insists it did not violate GR 37. So we will not address waiver.[4]

At the State's invitation, we reach the merits of McCrea's argument that an

objective observer could view race or ethnicity as a factor in the State's use of its

---

[4] There are two additional reasons we do not dispose of this appeal on the basis of waiver. First, the trial court properly raised the issue, developed the record, and had an opportunity to correctly rule on it. These are the important considerations when deciding whether to address an issue on appeal. *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988) (general rule limiting review to issues raised below allows trial court to correct errors and encourages efficient use of court resources).

Second, court officers have a responsibility to ensure that important rights are protected during court proceedings. Although GR 37 is a procedural rule, it affects substantial constitutional rights. *Jefferson*, 192 Wn.2d at 248. If we do not protect these important rights, we risk adversely affecting public perceptions of the fairness and integrity of court proceedings. *See State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995) ("[C]onstitutional errors are treated specially . . . because they . . . may adversely affect public perceptions of the fairness and integrity of judicial proceedings.").

peremptory challenges. We review this question de novo. *Jefferson*, 192 Wn.2d at 250; *State v. Listoe*, 15 Wn. App. 2d 308, 321, 475 P.3d 534 (2020); *State v. Omar*, 12 Wn. App. 2d 747, 750-51, 460 P.3d 225, *review denied*, 196 Wn.2d 1016, 475 P.3d 164 (2020).

For excluding venire juror 44 (Ms. Bigwolf), the prosecutor said he chose someone in the back row because he feared that using a peremptory might result in accepting persons in front of the challenged juror. But challenging someone in the back row is the opposite of what someone with such a fear would do. We agree with the trial court: this explanation makes no sense.

For excluding venire juror 13 (Ms. Vargas), the prosecutor said he wanted jurors 1 through 12. Even if the prosecutor meant he wanted the original first 12 venire jurors, his explanation does not justify why he excluded Ms. Vargas rather than any other venire juror with a higher number.

On appeal, the State argues the true reason the prosecutor exercised a peremptory challenge on Ms. Vargas was because she wished to attend a memorial. The prosecutor latched onto this reason only after the trial court remarked that Ms. Vargas was the venire member who wanted to attend a memorial. We are unconvinced by the State's argument. It sounded contrived during voir dire and it sounds contrived on appeal.

We determine that an objective observer "could view race or ethnicity as a factor" in the State's use of its first two peremptory challenges. The State excluded two Native Americans on the venire panel with its first two challenges and the reasons for doing so make no sense.

The State violated GR 37 twice. We need not reach the question of whether it continued to violate the rule by excluding Latinxs from the jury. The remedy for a GR 37 violation is a new trial. *Listoe*, 15 Wn. App. 2d at 329. We reverse McCrea's two convictions and remand for a new trial.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Staab, J.

10

No. 37416-5-III; 37417-3-III
*State v. McCrea*

ADDENDUM

