IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>              Respondent,<br><br>      v.<br><br>ANTHONY WILLIAM GEORGE, SR.,<br><br>              Appellant. | No. 83309-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br>ON REMAND |

SMITH, C.J. — This case comes to us by way of remand from our Supreme Court, which directed us to reconsider the case "in light of Supreme Court No. 100166-5—State of Washington v. Amanuel Tesfasilasye-Goitom." State v. George, No. 100931-3 (Wash. Jan. 4, 2023). The only issue before us on remand is whether the trial court erred in overruling George's GR 37 objection. We previously concluded that the court did not err and affirmed the convictions. We do so again now.

FACTS

The underlying facts are set out in detail in this court's unpublished opinion and briefly repeated here. State v. George, No. 83309-0-I (Wash. Ct. App. Apr. 18, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/833090.pdf.

The State charged Anthony William George with three counts of possession with intent to deliver while armed with a firearm, one count of simple possession, and three counts of unlawful possession of a firearm in the first

degree.  During jury selection, the State spoke with several jurors about the possibility that not all evidence would be presented to the jury.  The State explained that the rules of evidence sometimes prevented evidence from being admitted and asked if any jurors felt uncomfortable with that notion.  The State questioned six jurors on this issue: juror 53, juror 56, juror 64, juror 83, juror 169, and juror 174.

In response to the State's question, juror 83 responded:

> I think a little bit.  But I am going to want to know obviously as much as I can to make the right decision.  Everybody probably wants that. So if that—if there is something missing, I mean, is that a question that should be asked by the jurors?  Like, what about this, if it wasn't brought up here?

The State told juror 83 that the jurors wouldn't be able to ask questions of the court and that, typically, the court would tell the jurors that they "have heard the evidence and [that they] have the instructions."

The State then asked juror 64 whether not hearing some evidence would "bother [them] as a juror when [they] deliberate."  Juror 64 responded:

> I have been on one trial before, it was a case where we could tell, because the time line [sic], it didn't line up, but we just had to go with what we had.

The State then asked the venire:

> Is there anybody who, as a potential juror, is actually going to have a problem with the idea that certain evidence is not admissible, and you won't get to hear it.  You will go back to deliberate, and say, I feel like someone is hiding the ball, the State, the judge, defense, somebody is hiding the ball, and that's going to affect your deliberations so you are not fair and impartial to the defendant. Anybody have an issue with that?

Juror 53 responded, "yes," and then had the following exchange with the State:

[THE STATE]: Okay.

[JUROR 53]: There are a lots [sic] people locked up right now because everything wasn't presented.

[THE STATE]: Okay. And, does—let me ask you the question. Do you think that our criminal justice system works, broadly speaking?

[JUROR 53]: Yes and no.

[THE STATE]: Okay. There is always room for improvement?

[JUROR 53]: Right.

[THE STATE]: Gotcha. All right.

The State asked juror 56 if they would feel uneasy about some evidence not being admitted. Juror 56 responded, "No."

The State then pivoted back to juror 53:

[THE STATE]: Okay. 53, if you are on this jury and that situation does come up and you feel like something wasn't brought out, or—

[JUROR 53]: I would like to know why.

[THE STATE]: Sure. Let's say you don't get to find out why. Is that something that through deliberations you might be able to talk to your fellow jurors and come to—or is that always going to be a problem?

[JUROR 53]: Always going to be a problem.

[THE STATE]: Gotcha.

The State questioned two more jurors on missing evidence. Juror 169 stated that it would feel "like the State is withholding something" and like the State was "lying, essentially" by "not bringing all the evidence to the table" and not explaining why. The State asked if the fact that evidence was not admitted would feel like "[a] lie by omission" and juror 169 responded, "Yes." The State then asked juror 174 to weigh in, and juror 174 gave a lengthy response:

[JUROR 174]: I was in a trial as a juror before, and there was [a] tremendous amount of witnesses, there were cell phones, took video, and all of that, and it was a resisting arrest charge, okay? And the judge absolutely forbid any of that be shown. So we never got to see that evidence. And in that case, when I talked a little bit

3

about coercion, I truly think that it would have dismissed the case had we seen that, but they wouldn't allow that, and so the charge stood, and I personally feel that it never would have—it never would have, if—of course, I never got to see the video. The rumor was, what was on the video, would have made it. You know, that's after the trial, and I got able to talk to people and stuff like, wow, if you would have seen what was on the video, you probably would have had a different opinion. So when you ask does it work? Kind of. Sometimes. I also think that there is times where the public and political pressure, is really milking it up, okay? Good example, DUI laws, okay, there is the one where you are guilty until proven innocent. Period.

[THE STATE]: Because of the blow level?

[JUROR 174]: Yeah. The blow level, the immediate have to start treatment, blah, blah, blah, whether you are guilty, that may be a year down the road.

. . . .

[THE STATE]: Sure. So just based on what you hear of the allegations and what you might be able to infer from the nature of our questions is there anything about this case that kind of raises some feelings like that?

[JUROR 174]: No.

Defense counsel also asked the venire about why and how wrongful convictions occur, to which juror 28 replied, "Because the lady is blind." Defense counsel then elicited the following responses from juror 28:

[DEFENSE]: You are shown evidence. Whatever the State wants you to see, right?

[JUROR 28]: Sometimes that's—yeah that's it.

[DEFENSE]: That's just what?

[JUROR 28]: Sometimes everything is not shown.

[DEFENSE]: Sometimes you aren't shown everything, right? How in the world can that be?

[JUROR 28]: They are only going to show evidence that helps them.

At some point, George used a peremptory challenge to remove juror 28.

The State later exercised a peremptory challenge against potential juror 53.

4

George raised a GR 37 challenge in response. The trial court then asked the State to explain its reason for the strike. The State denied it was striking juror 53 because he was a Black man. Instead, the State contended it wanted to strike juror 53 because the charges relied on confidential informant information and it was highly unlikely that the jurors would get to see that evidence. For example, the jurors would not learn about a search of George's cell phone or how the investigation culminated in a search warrant. The State explained that juror 53's responses to its questions about missing evidence—that he would feel uneasy, that it would affect his decision making process, and that it would affect his ability to consider the evidence—were concerning. The State noted that it didn't think the juror's responses "would necessarily interfere with his ability to be fair and impartial," but that "his responses were unique" and no other potential juror answered similarly.

Defense counsel pushed back: "The distrust described by the State [i.e., the hiding the ball] is no different than distrust of law enforcement. It's just the next step in that same distrust, right?" Counsel continued:

> [I]t's an inherent bias in the system, not just law enforcement. I know that's a factor and enumerated under GR 37. The response by that juror, Juror 53, was no different than several other responses from the several other jurors that were not stricken. So I don't think that can be a basis. I recall several jurors having distrust about not getting all the evidence, and that's really what the question that the State is relying on. And so, I know Juror Number 28 that I struck, had indicated the same thing, that you are not going to get everything, that there is going to be things that we don't.

5

The trial court noted that it did not remember juror 53 mentioning "anything about having distrust for anybody, law enforcement or the Court, or the prosecutor." It stated that juror 53 "just said it makes [him] uncomfortable and it might affect [his] decision-making if [he] realize[s] or come[s] to realize that there is missing evidence." The court agreed with the State that juror 53's responses were uniquely "strongly worded." And given that the State's case would involve suppressed information, the court reasoned that the juror's unease would "prejudice[] the State's rights and interests."

The court concluded by stating that it did not "get the sense or impression at all that [the challenge] had anything to do with race, had anything to do with anything [sic] impermissible grounds listed in GR 37." The court overruled the GR 37 objection and granted the State's peremptory challenge. It also made a finding that an objective observer watching voir dire could not conclude that race was a factor in the State's decision to challenge the juror.

Of the six jurors questioned by the State about missing or suppressed evidence, only juror 56, who unequivocally stated that suppressed evidence would not be an issue, was seated on the jury.[1]

The jury convicted George as charged. He appealed. This court affirmed the convictions except for the simple possession charge and remanded for resentencing. George, No. 83309-0-I, slip op. at 33. On January 4, 2023, our Supreme Court granted George's petition for review and remanded his appeal

---

[1] It appears that juror 53 would have been seated on the jury if not for the peremptory challenge.

back to us for reconsideration in light of the court's opinion in State v. Tesfasilasye, 200 Wn.2d 345, 518 P.3d 193 (2022). The parties submitted supplemental briefing addressing the effect of Tesfasilasye on George's appeal.

ANALYSIS

George contends the trial court erred by overruling his GR 37 challenge because the State relied on a presumptively invalid reason when exercising the peremptory challenge. George also asserts that the State should not have used a peremptory challenge where a for cause challenge would be more appropriate. Based on the totality of the circumstances, we conclude that the court did not err by denying the GR 37 challenge because the State offered a race-neutral justification for juror 53's dismissal and an objective observer could not view race or ethnicity as a factor in the use of the State's peremptory challenge. We also disagree that the State should have exercised a for cause challenge.

Standard of Review

Though GR 37 does not address the proper appellate standard of review, several Court of Appeals cases have applied a de novo standard. State v. Hale, __ Wn. App. 2d __, 537 P.3d 707, 712 (2023); see, e.g., State v. Listoe, 15 Wn. App. 2d 308, 321, 475 P.3d 534 (2020); State v. Omar, 12 Wn. App. 2d 747, 750-51, 460 P.3d 225 (2020); State v. Lahman, 17 Wn. App. 2d 925, 935, 488 P.3d 881 (2021); State v. Orozco, 19 Wn. App. 2d 367, 374, 496 P.3d 1215 (2021). Our state Supreme Court has not directly addressed this issue, but recently noted that "most courts have effectively applied de novo review because the appellant court 'stand[s] in the same position as does the trial court' in

determining whether an objective observer could conclude that race was a factor in the peremptory strike." Tesfasilasye, 200 Wn.2d at 355-56 (alteration in original) (quoting State v. Jefferson, 192 Wn.2d 225, 250, 429 P.3d 467 (2018)). The court proceeded to apply a de novo review to the facts of that case because "there were no actual findings of fact and none of the trial court's determinations apparently depended on an assessment of credibility." Tesfasilasye, 200 Wn.2d at 356. But the court stated, "[W]e leave further refinement of the standard of review open for a case that squarely presents the question based on a well-developed record." Tesfasilasye, 200 Wn.2d at 356. Generally, the proper remedy for a GR 37 violation is remand for a new trial. Lahman, 17 Wn. App. 2d at 929; but see Hale, 537 P.3d at 718-19 (conducting harmless error analysis where trial court erroneously granted GR 37 challenge).

Here, neither party challenges whether juror 53 was a person of color and the record does not indicate that the court's ruling involved any factual findings or credibility determinations. Therefore, our review is de novo.

### GR 37

To combat potential abuses of peremptory challenges and address the shortcomings of Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986),[2] our Supreme Court created GR 37. GR 37 aims "to eliminate the

---

[2] Batson created a three-step process for challenging peremptory challenges based on race. The defendant must first establish a prima facie case that "gives rise to an inference of discriminatory purpose." Batson, 476 U.S. at 94. Then, "the burden shifts to the State to come forward with a neutral explanation" for the challenge. Batson, 476 U.S. at 97. If the State meets this burden, then "[t]he trial court [has] the burden to determine if the defendant has established purposeful discrimination." Batson, 476 U.S. at 98.

unfair exclusion of potential jurors based on race or ethnicity." GR 37(a). Either party "may object to the use of a peremptory challenge to raise the issue of improper bias." GR 37(c). Once an objection is made, "the party exercising the peremptory challenge shall articulate the reasons the peremptory challenge has been exercised." GR 37(d). Then, the court must "evaluate the reasons given to justify the peremptory challenge in light of the totality of circumstances." GR 37(e). Certain reasons are presumptively invalid bases for exercising a peremptory challenge, such as prior contact with law enforcement officers, or a distrust of law enforcement. GR 37(h)(i)-(ii). "If the court determines that an objective observer could view race or ethnicity as a factor in the use of the peremptory challenge, then the peremptory challenge shall be denied." GR 37(e). GR 37(f) defines an "objective observer" as someone who is "aware that implicit, institutional, and unconscious biases, in addition to purposeful discrimination, have resulted in the unfair exclusion of potential jurors in Washington State."

In making a GR 37 ruling, the court should consider the following circumstances:

> (i) the number and types of questions posed to the prospective juror, which may include consideration of whether the party exercising the peremptory challenge failed to question the prospective juror about the alleged concern or the types of questions asked about it;

> (ii) whether the party exercising the peremptory challenge asked significantly more questions or different questions of the potential juror against whom the peremptory challenge was used in contrast to other jurors;

> (iii) whether other prospective jurors provided similar answers but were not the subject of a peremptory challenge by that party;

(iv) whether a reason might be disproportionately associated with a race or ethnicity; and

(v) whether the party has used peremptory challenges disproportionately against a given race or ethnicity, in the present case or in past cases.

GR 37(g). These circumstances are "not a checklist for trial courts to cross off but, instead, factors to be considered in making a determination." Tesfasilasye, 200 Wn.2d at 358. GR 37(h) also provides a list of presumptively invalid reasons for exercising a peremptory challenge, including having prior contact with law enforcement, expressing a distrust of law enforcement, or having a close relationship with people who have been stopped, arrested, or convicted of a crime. The court must sustain a GR 37 objection if the reason provided is similar to one of the presumptively invalid reasons under GR 37(h). Tesfasilasye, 200 Wn.2d at 359. Similarly, the court may find, based on the totality of the circumstances, that GR 37(h) is implicated even if the proffered reason does not expressly fall under one of the enumerated presumptively invalid reasons. See, e.g., State v. Harrison, 26 Wn. App. 2d 575, 582-83, 528 P.3d 849 (2023) (State's proffered reason of excluding a juror based on the juror's mindfulness of the Black Lives Matter movement and media coverage on racial justice issues implicated a distrust of law enforcement or belief that law enforcement engaged in racial profiling, a presumptively invalid reason). The court must also sustain a GR 37 objection if the record does not support the reason given or if the reason given is vague or questionable. Hale, 537 P.3d at 715.

On remand, our Supreme Court directed us to reconsider George's GR 37 objection in light of its holding in Tesfasilasye. In that case, the court concluded

10

that the trial court should have denied peremptory challenges exercised by the State against an Asian woman juror and a Latino juror. 200 Wn.2d at 347, 360-61. The State moved to strike the Asian juror due to concerns the juror would be biased because she believed her son had been treated unfairly by the criminal legal system. Tesfasilasye, 200 Wn.2d at 359. But the State's reasoning involved one of the presumptively invalid justifications: having a close relationship with people who have been stopped, arrested, or convicted of a crime. Tesfasilasye, 200 Wn.2d at 359; GR 37(h)(iii). The court concluded that the trial court erred in granting the peremptory challenge because the juror repeatedly indicated she could be fair and impartial, she understood her role as a juror, and she was willing to listen to all the evidence before reaching a verdict. Tesfasilasye, 200 Wn.2d at 359. Moreover, the State did not seek to strike other jurors who shared similar experiences. Tesfasilasye, 200 Wn.2d at 360.

The State moved to strike the Latino juror after he listed what kind of evidence he would like to see from the State to be convinced beyond a reasonable doubt, including eyewitnesses and DNA samples. Tesfasilasye, 200 Wn.2d at 361. But this conversation was in the context of whether the juror would hold the State to a higher burden of proof and it was unclear whether the juror understood what the burden of proof was at that point in time. Tesfasilasye, 200 Wn.2d at 361. Further, the juror also said that he would follow the court's instructions and render a guilty verdict if he believed the State had met its burden. Tesfasilasye, 200 Wn.2d at 360-61. Like with the Asian juror, the State did not attempt to strike another juror whose comments were similar to those

11

made by the Latino juror. Tesfasilasye, 200 Wn.2d at 361. The court also reiterated that the trial court's analysis under GR 37 should be based on whether an objective observer "could" view race as a factor, not whether the observer "would" view race as a factor. Tesfasilasye, 200 Wn.2d at 361.

Tesfasilasye is readily distinguishable from the present case. Here, the State made a peremptory challenge against juror 53 after the juror stated that missing evidence was "always going to be a problem." George objected because juror 53 is Black. After the court asked the State to provide a race-neutral reason for the challenge, the State explained that it exercised the challenge because (1) the case involved confidential informants and the jurors would not get to see some evidence, and (2) juror 53 said that withheld or missing evidence was "always going to be a problem" that would affect his ability to deliberate. These were legitimate, race-neutral reasons. The State's case relied heavily on confidential informant information that the parties had already agreed to suppress, and the State legitimately might have concerns about a juror who stated that missing evidence would "always" be an issue. Defense counsel seemed to acknowledge the State's reasons were valid during discussion of the challenge: defense counsel admitted to striking a juror who indicated a distrust in not getting all the evidence, although it is unclear if this was the sole reason for the challenge.

We next consider the circumstances listed in GR 37(g). Hale, 537 P.3d at 717. Circumstances (i) and (ii) ask us to consider the number and type of questions posed to the challenged juror as compared to other jurors.

GR 37(g)(i)-(ii). Five other jurors were questioned about missing evidence but none of these jurors answered similarly to juror 53. For example, as previously noted, juror 56—the only questioned juror to be seated on the jury—plainly answered "no," that excluded evidence would not bother them. Of the unseated jurors who were questioned about missing evidence, juror 64 stated that they had been in a trial with excluded evidence before and that the jurors "just had to go with what [they] had." Juror 83 stated that the missing evidence would bother them "a little bit" but that they would "want to know obviously as much as [they] can to make the right decision." Juror 169 noted that it would "feel like the State is withholding something," like a lie by omission. And when asked whether excluded evidence would be cause for concern, juror 174 answered "no."[3] Nor were the other questioned jurors asked significantly more questions or different questions from juror 53. The State spent similar amounts of time with each juror and asked similar questions of each juror. Viewed objectively, circumstances (i) and (ii) do not support a conclusion that juror 53's race or ethnicity could be a factor in the peremptory challenge.

Circumstance (iii) asks us to consider whether other jurors provided similar answers to the challenged juror but were not subjected to challenges themselves. GR 37(g)(iii). As discussed, the five other jurors questioned by the State did not respond similarly to juror 53. George exercised a peremptory challenge against juror 28, who stated that "the lady is blind," that the jury has to

---

[3] Juror 174 was a juror in a separate case that involved suppressed evidence and expressed frustration with that case. But the juror said none of those feelings of frustration were present in this case.

"decide who is telling the truth, who is not," that all the jurors know is "that the State thinks [the defendant] did something," that "[s]ometimes everything is not shown," and that the State was "only going to show evidence that helps them." But it is unclear if the challenge was premised on the juror's stated distrust of not having all the evidence or on another basis.[4] Viewed objectively, this circumstance does not support a conclusion that juror 53's race or ethnicity could be a factor in the peremptory challenge.

Circumstance (iv) asks us to consider whether the State's given reason for the peremptory challenge might be disproportionately associated with race or ethnicity. GR 37(g)(iv). The State's basis for exercising a peremptory challenge was that juror 53 stated that missing evidence would always impact his ability to deliberate. This reason is not associated with race or ethnicity. Viewed objectively, circumstance (iv) does not support a conclusion that juror 53's race or ethnicity could be a factor in the peremptory challenge.

Circumstance (v) asks us to consider whether the State disproportionately used peremptory challenges against a given race or ethnicity, in the present case or in past cases. GR 37(g)(v). The record does not reflect whether there were any other persons of color on the venire, and the parties do not argue that there were. Viewed objectively, circumstance (v) does not support a conclusion that juror 53's race or ethnicity could be a factor in the peremptory challenge.

---

[4] The supplemental clerk's papers indicate that defense counsel used a peremptory challenge against juror 28, and defense counsel later states on the record that they excused juror 28, but the challenge itself is not in the record.

14

The State's reasons for the peremptory challenge were also not presumptively invalid under GR 37(h) or historically associated with improper discrimination in jury selection under GR 37(i). Regarding GR 37(h), George contends that the State relied on a presumptively invalid reason—a distrust in law enforcement—because juror 53 stated that the criminal justice system does not always work and that people are wrongfully incarcerated due to missing evidence.[5] Had this been the end of the State's exchange with juror 53, the peremptory challenge would have relied on impermissible grounds. But the State then elicited statements which clarified juror 53's concern by asking whether the juror would be able to talk through this unease in jury deliberations. Juror 53 replied that missing evidence was "[a]lways going to be a problem." This exchange does not implicate a distrust in law enforcement but, rather, focuses on the potential juror's ability to perform the duties of a juror. Unlike the stricken jurors in Tesfasilasye, both of whom stated that they would be able to follow the court's instructions and the law, juror 53 did not give such assurances that he could do so.

George also asserts that the State improperly used a peremptory challenge against juror 53 when it should have used a for cause challenge. In

---

[5] The exchange is as follows:
[JUROR 53]: There are a lots [sic] people locked up right now because everything wasn't presented.
[THE STATE]: Okay. And, does—let me ask you the question. Do you think that our criminal justice system works, broadly speaking?
[JUROR 53]: Yes and no.
[THE STATE]: Okay. There is always room for improvement?
[JUROR 53]: Right.

support of this assertion, he relies on the following language from <u>Tesfasilasye</u>: "If a juror can be excused for cause, they should be excused for cause. Biased jurors simply should not be seated. But GR 37 is qualitatively different and is aimed at curing a different problem. It is not an alternate way to dismiss jurors for cause." 200 Wn.2d at 359. It is not apparent from the record that counsel could have challenged juror 53 for cause. Moreover, the language George cites from <u>Tesfasilasye</u> is more properly interpreted as dicta. Whether a challenge is more properly brought as a for cause challenge or as a peremptory challenge was not before the court in <u>Tesfasilasye</u>. 200 Wn.2d at 359 ("Whether the existence of cause is a basis for overcoming a GR 37 objection is an interesting question but not one well presented [sic] here."). We disagree that the State should have brought a for cause challenge.

Under the totality of the circumstances, the State articulated a valid basis for the peremptory challenge. The State's case rested on information gleaned from confidential informants and the parties had agreed that the origin of this evidence would be suppressed. Thus, the State had a valid interest in striking potential jurors for whom suppressed evidence would be a problem, particularly where the missing evidence would "always" be a problem. Considering the nature of the case, the other jurors who were questioned, and which jurors ultimately ended up on the venire, and juror 53's unequivocal statement that missing evidence would always be a problem, the State had a valid, race neutral reason for striking juror 53.

Because an objective observer could not have viewed race or ethnicity as a factor in juror 53's dismissal, we conclude that the trial court did not err in denying George's GR 37 challenge.

Affirmed.

_Smith, C.J._

WE CONCUR:

_Mann, J._          _Dwyer, J._