IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37386-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| BENJAMIN OROZCO, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Benjamin Orozco appeals his convictions for second degree murder, first degree assault, and second degree unlawful possession of a firearm. He raises several issues, some with substantial merit. One issue is dispositive and we generally limit our discussion to that issue. We reverse and remand for a new trial because one venire juror was excluded from service in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), and GR 37.

FACTS

On July 7, 1996, Benjamin Orozco shot Lance Terry and David Eaton. Terry died. Eaton identified Orozco as the shooter and David Delarosa as a possible accomplice.

Two days later, the State charged Orozco with one count of second degree murder of Terry and one count of first degree assault of Eaton. The court found probable cause and issued an arrest warrant.

Orozco and Delarosa met up in Walla Walla, then went to Idaho before traveling to Mexico. They remained in Mexico together. In 1998, Delarosa was arrested and returned to the United States as a material witness. The State offered him immunity in exchange for testifying against Orozco, who had not yet been found.

*Pretrial procedure*

On April 22, 2015, the State filed a formal petition for Orozco's extradition from Mexico to the United States.[1] One year later, he was arrested in Mexico. Mexico approved the requested extradition for the following charges:

> **Count one:** Second degree murder of Lance Terry, against RCW 9A.32.050(1)(a), Washington State, United States of America.
>
> **Count two:** First degree assault on David Eaton, against RCW 9A.36.011, Washington State, United States of America.

Clerk's Papers at 902-03. Orozco unsuccessfully contested extradition in the Mexican courts and was returned to the United States to face trial.

The State charged Orozco with second degree murder of Terry and first degree assault of Eaton. The State amended the information to add a firearm enhancement to each count. The State later amended to add a third count, second degree unlawful

---

[1] The procedural facts related to extradition are found in a lengthy document prepared by the Mexican State Department.

2

possession of a firearm (UPFA).

*Trial*

*Motion to dismiss*

On the first day of trial, the court heard Orozco's motion to dismiss the firearm enhancements and the UPFA charge. Orozco's motion was based on a lengthy document in Spanish that had yet to be translated. Orozco claimed the document was the "Extradition Agreement." Report of Proceedings (RP) at 348. A Washington State certified interpreter appeared in court and testified that he had read the document but was uncomfortable translating it because it contained federal-level legal terminology. The trial court denied Orozco's motion.

*Voir dire*

We limit our discussion of voir dire to that involving the dispositive issue. The trial court asked whether any prospective juror knew the prosecutor trying the case. Eleven venire jurors answered yes, including venire juror 25. The court asked the venire jury if there was anyone who could not be fair and impartial to both the State and the defendant. Several people raised their hands. Venire juror 25 did not raise her hand. Throughout voir dire, neither side individually questioned venire juror 25.

The parties exercised their peremptory challenges. The State challenged six jurors,

including venire juror 25. Orozco challenged five venire jurors. As the court called the

jurors to take their seats in the jury box, there was a pause and the court called counsel to

a sidebar. A discussion ensued but was not placed on the record. The court then

continued calling jurors to take their seats. Once counsel confirmed that the seated jurors

were consistent with their notes, the court excused the venire. The court gave the jurors

their oath, gave a standard introductory instruction, and took a 10 minute recess.

Batson *and GR 37 objections*

The court reconvened after the recess and asked the parties to address Orozco's

*Batson* and GR 37 challenges. Orozco's counsel began:

> Your Honor, for the record, Juror Number 25—and just because it's not
> going to be apparent on the record—Juror Number 25 appeared to be an
> African American female; the only African American female in the entire
> pool and the State—the State struck the—and she made it up into the first
> 12, into the jury box and the State struck the only African American female
> that was on the—in the pool.
>     There were no questions asked of her and she didn't respond to any
> of the questions that were asked by either one of us. So it—on it's [sic]
> face, it can't be said that she—that she made any remarks that would give
> the Court or give State's Counsel any reason to believe that she wasn't a fit
> juror for this case.
>     So we are raising a challenge under Batson and that was codified in
> GR 37, which I think now is a little stricter on its rules. . . .

RP at 346.  When the defense asked why the State exercised the peremptory, the

following exchange took place:

> [THE STATE]:  Your Honor, I've prosecuted [venire juror 25] in the past for minor crimes—they weren't anything major; she's not a felon, but I have prosecuted her in the past and also her name has appeared in a number of police reports as associating with people that I believe have been engaged in criminal activity.
> THE COURT:  Okay.
> [THE DEFENSE]:  And, Your Honor, we'd still object to her removal.  Under the Rules—the State didn't ask her any questions such as whether . . . having been prosecuted by the State would in any way bias her against our Client.  There was no dialogue or reason to believe that such interactions would cause a bias to either the State or the Defense.
> . . . [W]e are stating that is not an acceptable reason to have the peremptory challenge under Rule GR 37.  And even having a close relationship with people who've been stopped, arrested, or convicted of a crime is not a reason to exercise a peremptory under [ ] GR 37. . . .  For the record, we do believe it's an improper peremptory under GR 37.
> THE COURT:  Actually, based on the State's response, I accept what they've said and that will be denied.

RP at 347.

### Verdict and sentencing

The parties presented their evidence, and the case was argued and submitted to the

jury.  The jury found Orozco guilty as charged.  It also found that Orozco was armed with

a firearm during the commission of counts 1 and 2.  The trial court sentenced Orozco to

435 months of imprisonment followed by 24 months of community supervision.

5

ANALYSIS

Orozco contends the trial court erred in overruling his *Batson* and GR 37 objections to the State's peremptory strike against venire juror 25.  We agree.

Criminal defendants are guaranteed the right to a fair and impartial jury. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22.  Furthermore, prospective jurors themselves have the constitutional right not to be excluded from serving on a jury due to discrimination.  *Powers v. Ohio*, 499 U.S. 400, 409, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991).  During jury selection, parties exercise peremptory challenges—where they strike jurors for no stated reason—to select jurors they believe will be best for their case.  *State v. Lahman*, __ Wn. App. 2d __, 488 P.3d 881, 883 (2021).  These challenges, while important, are potentially rife with implicit and explicit bias.  *Id.* at 884.

Washington has adopted the *Batson* three-part framework for determining whether a peremptory challenge was impermissibly racially motivated.  *State v. Jefferson*, 192 Wn.2d 225, 231, 429 P.3d 467 (2018) (plurality opinion).  The *Batson* framework provides:

> First, the defendant must establish a prima facie case that gives rise to an inference of discriminatory purpose.  Second, if a prima facie case is made, the burden shifts to the prosecutor to provide an adequate, race-neutral justification for the strike.  Finally, if a race-neutral explanation is provided, the court must weigh all relevant circumstances and decide if the strike was motivated by racial animus.

6

*City of Seattle v. Erickson*, 188 Wn.2d 721, 726-27, 398 P.3d 1124 (2017) (citations and internal quotation marks omitted). "Though the United States Supreme Court provided this framework, it left the states to establish rules for the 'particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges.'" *Id.* at 727 (quoting *Batson*, 476 U.S. at 99).

In recent years, the Washington Supreme Court has established rules to better meet the goals of ending racial discrimination in jury selection. In *Erickson*, the court adopted a bright-line rule for the first step in *Batson*: "the trial court must recognize a prima facie case of discriminatory purpose when the sole member of a racially cognizable group has been struck from the jury." *Id.* at 734. In *Jefferson*, the court modified the third step in *Batson* to incorporate GR 37, effective April 24, 2018. 192 Wn.2d at 244-45; *see also State v. Berhe*, 193 Wn.2d 647, 664-65, 444 P.3d 1172 (2019) (discussing Supreme Court's adoption of GR 37). We review the third step of *Batson* and the application of GR 37

de novo. *Jefferson*, 192 Wn.2d at 250; *State v. Omar*, 12 Wn. App. 2d 747, 750-51, 460 P.3d 225, *review denied*, 196 Wn.2d 1016, 475 P.3d 164 (2020); *State v. Listoe*, 15 Wn. App. 2d 308, 321, 475 P.3d 534 (2020).

Under GR 37, a party or the court may object to the use of a peremptory challenge based on improper bias. GR 37(c). Upon objection, a discussion must be held outside the presence of the jury where the party exercising the challenge articulates its reasons for doing so. GR 37(d).[2] The court then evaluates the proffered justification in light of the totality of the circumstances. GR 37(e). "If the court determines that an objective observer could view race or ethnicity as a factor in the use of the peremptory challenge, then the peremptory challenge shall be denied." *Id.* The court need not find purposeful discrimination to deny a peremptory challenge. *Id.* In making this determination, the court may consider the following, nonexclusive factors:

> (i) the number and types of Questions posed to the prospective juror, which may include consideration of whether the party exercising the peremptory challenge failed to Question the prospective juror about the alleged concern . . . ;
> (ii) whether the party exercising the peremptory challenge asked significantly more Questions or different Questions of the potential juror . . . ;
> (iii) whether other prospective jurors provided similar answers but were not the subject of a peremptory challenge by that party;
> (iv) whether a reason might be disproportionately associated with a race or ethnicity; and

---

[2] GR 37 generally requires an objection to be made before the potential juror is excused. It is unclear from the record whether the objection was timely. We note there was a sidebar discussion before the venire was released. The record does not show what was discussed. Regardless, the State does not argue that Orozco's GR 37 objection was untimely.

(v) whether the party has used peremptory challenges disproportionately against a given race or ethnicity, in the present case or in past cases.

GR 37(g). The rule provides seven presumptively invalid reasons that have been historically associated with improper discrimination in jury selection, including "having prior contact with law enforcement officers" and "having a close relationship with people who have been stopped, arrested, or convicted of a crime." GR 37(h)(i), (iii).

*Application of Washington's* Batson *test*

We first address the State's argument that the record does not show venire juror 25 was a person of color. It argues that because venire juror 25 did not self-identify as Black and because neither party nor the court asked her, we cannot know or assume her race. Its position is essentially that defense counsel's observations alone cannot support a GR 37 violation. But we recently noted that GR 37 is not about self-identification; it is evaluated from the viewpoint of an objective observer. *See Lahman*, 488 P.3d at 885 n.6 ("We emphasize that GR 37 has to do with appearances, not with whether a juror actually identifies with a racial or ethnic minority group.").

If the prosecutor thought venire juror 25 did not appear to be a person of color, the most reasonable response would have been to say so during the GR 37 discussion. Further, the trial court could have questioned the objection for that reason. On appeal,

9

No. 37386-0-III
*State v. Orozco*

Orozco supplemented the record with declarations from both of his trial attorneys that state that the State struck the only person of color from the jury pool. While it would have been helpful for the trial court to make a record about the apparent racial and ethnic makeup of the jury panel to better facilitate review, the circumstances here give rise to a reasonable inference that an objective observer could have perceived venire juror 25 to be a person of color. We now turn to application of Washington's three-part *Batson* test.

First, venire juror 25 was the only Black person in the jury pool.[3] Striking the only member of a racially cognizable group establishes a prima facie case of discriminatory purpose. *Erickson*, 188 Wn.2d at 734.

Second, the State failed to provide a race-neutral justification for the strike. The prosecutor explained he had prosecuted venire juror 25 for "minor crimes . . . and also her name has appeared in a number of police reports as associating with people that I believe have been engaged in criminal activity." RP at 347. Personally prosecuting a prospective juror for minor crimes is a race-neutral justification that supports a prosecutor's decision to remove that person from the jury. But the prosecutor combined this race-neutral justification with a presumptively invalid one. Recognizing venire juror 25 from multiple

___

[3] At trial, defense counsel remarked that venire juror 25 was the only Black *female*. In later declarations, both defense counsel state that venire juror 25 was the only Black *person* in the venire pool.

10

police reports indicates she has "prior contact with law enforcement officers" and "a close relationship with people who have been stopped, arrested, or convicted of a crime." GR 37(h)(i), (iii). These reasons are historically associated with improper racial discrimination in jury selection. Combining a race-neutral justification with a presumptively invalid one is not "race neutral." We conclude that the State failed to rebut the presumption that its peremptory strike was not for a discriminatory purpose.

Third, a de novo review of the record persuades us that an objective observer could view race as a factor in the use of the prosecutor's peremptory strike. Venire juror 25 indicated she could be fair and impartial to both sides. The prosecutor's assumption to the contrary is problematic here, given that venire juror 25 was the *sole* member of a racially cognizable group.

We are not suggesting that a prosecutor is precluded from using a peremptory challenge on a person of color they have previously prosecuted. A prosecutor may question all venire persons who know them and ask appropriate questions to search for improper bias. If some bias is shown—although insufficient to remove for cause—a trial judge would be in a stronger position to deny a challenge to a peremptory strike.

A trial judge must view the use of a peremptory strike on a member of a racially cognizable group with "skepticism and considerable caution." *Lahman*, 488 P.3d at 886.

11

No. 37386-0-III
*State v. Orozco*

This is especially so if the strike is used to remove the *sole* member of a racially cognizable group. We conclude that the State violated *Batson* and GR 37 by striking the only Black person during voir dire and providing a presumptively invalid justification for doing do. The remedy is a new trial. *Listoe*, 15 Wn. App. 2d at 329; *Lahman*, 488 P.3d at 884.

Reversed and remanded.[4]

_____
Lawrence-Berrey, J.

I CONCUR:

_____
Siddoway, J.

---

[4] In the interest of judicial economy, we sometimes address issues beyond the dispositive issue if their resolution will be helpful to the trial court. *Philadelphia II v. Gregoire*, 128 Wn.2d 707, 716, 911 P.2d 389 (1996). Orozco claims he received ineffective assistance of counsel because his trial counsel failed to translate the lengthy Spanish document into English so the trial court could properly rule on his motion to dismiss the enhancements and the new count. We decline to reach the ineffective assistance of counsel claim because this will not assist the trial court on remand. We nevertheless address a legal issue associated with that claim—the rule of specialty. Correctly understanding this rule will assist the trial court on remand.

The rule of specialty prohibits a requesting country from prosecuting an extradited defendant for crimes other than those for which the rendering country explicitly granted extradition. *State v. French*, 157 Wn.2d 593, 607 n.6, 141 P.3d 54 (2006); *State v. Pang*, 132 Wn.2d 852, 902, 940 P.2d 1293 (1997). By promising to honor another country's limitations on prosecutions, we better protect our own citizens in prosecutions abroad. *United States v. Andonian*, 29 F.3d 1432, 1435 (9th Cir. 1994).

12

No. 37386-0-III

PENNELL, C.J. (concurring) — A jury convicted Benjamin Orozco of horrific acts of violence. We reverse his convictions for reasons not related to guilt, but to the integrity of the trial process. Future litigants would be well advised to think carefully about the scope of GR 37 before exercising peremptory strikes at trial.

The prosecutor's stated reason for striking venire juror 25 was about as compelling as one can get outside of a challenge for cause. It is not hard to understand why an attorney would not want a prior adversarial party to sit as a juror. Even when a controversy is minor, there are often hard feelings that are uncomfortable to disclose. In addition, apart from potential acrimony, an attorney will often have legitimate reasons to not want an acquaintance to sit on a jury panel. Jurors need to be focused on the argument and evidence before them. The existence of a past relationship raises the risk of unnecessary distractions. An attorney need not conduct any individual questioning to come to the reasonable conclusion that an acquaintance is not someone who would make a good juror. This is the classic scenario for a peremptory strike.

But as sympathetic as I am to the prosecutor's stated reason for this strike, I cannot disagree with the majority's ultimate disposition. Our general rule on jury selection asks whether "an" objective observer "could" view race or ethnicity as "a" factor in the use of the peremptory strike. GR 37(e). This is an incredibly broad standard. An objective observer, especially one who has experienced life as a person of color, easily "could" conclude race was "a" factor in the use of a peremptory strike against venire juror 25.

No. 37386-0-III
*State v. Orozco* (Concurrence)

When explaining his reasons for the strike, the State's prosecutor mentioned not only the prior criminal cases against venire juror 25, but also the fact that venire juror 25's name had come up in some police reports. No citation to authority is necessary to support the claim that people of color are disproportionately targeted by the criminal justice system.[1] *Could* race have been *a* factor in causing venire juror 25 to have run-ins with police that were documented in police reports? Undoubtedly. Given this fact, race certainly could have played a role leading up to the prosecutor's strike of venire juror 25 and could have been viewed as such by an objective observer. The requirements for GR 37 were met.

GR 37 is a broad rule that requires attorneys and judges to fundamentally change their perspectives on peremptory challenges. There may be limited circumstances where a peremptory strike against a person of color will be upheld. But they are likely rare, especially when the race or ethnicity of a challenged juror is not otherwise represented in the jury venire. If a for-cause challenge cannot be sustained, counsel would be well advised to exercise restraint and accept the juror onto the panel.

_____, C.J.
Pennell, C.J.

---

[1] Yet such citations can easily be given. *See* WASH. STATE SUPREME COURT GENDER & JUSTICE COMM'N, 2021 GENDER JUSTICE STUDY (2021), https://www.courts.wa.gov/?fa=home.sub&org=gjc&page=studyReport&layout=2&parent=study; RESEARCH WORKING GRP., TASK FORCE 2.0, RACE AND WASHINGTON'S CRIMINAL JUSTICE SYSTEM: 2021 REPORT TO THE WASHINGTON SUPREME COURT (2021), https://digitalcommons.law.seattleu.edu/korematsu_center/116.