# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
OCTOBER 6, 2022

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
OCTOBER 6, 2022

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 100166-5 |
| | ) | |
| v. | ) | |
| | ) | |
| AMANUEL TESFASILASYE, | ) | Filed: October 6, 2022 |
| AKA: AMANUEL | ) | |
| TESFASILASYE-GOITOM, | ) | |
| | ) | |
| Petitioner. | ) | |

GONZÁLEZ, C.J. — Racial bias has long infected our jury selection process. *State v. Jefferson*, 192 Wn.2d 225, 240, 429 P.3d 467 (2018) (plurality opinion). As part of our efforts to reduce racial bias in the judicial system, this court enacted GR 37, which directs trial judges to deny a peremptory challenge when an objective observer could view race as a factor in its use. Over GR 37 objections, two potential jurors, both people of color, were struck from the jury in this case. The Court of Appeals affirmed. We now reverse.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Tesfasilasye*, No. 100166-5

BACKGROUND

Amanuel Tesfasilasye[1] is a Black Eritrean immigrant whose primary language is Tigrigna. Tesfasilasye worked for Solid Ground as a driver for people with disabilities. C.R.R. used Solid Ground's services. C.R.R. is visually impaired and sometimes uses a wheelchair due to balance issues.

The day after Tesfasilasye drove C.R.R. home, C.R.R. reported that a Solid Ground driver had sexually assaulted her the day before. The State charged Tesfasilasye with third degree rape. During voir dire, the State brought peremptory challenges against juror 25, an Asian woman, and juror 3, a Latino.

In the initial written questionnaire, juror 25 said she was not sure she could be fair. Based on that answer, she was interviewed individually. During that individual voir dire, she revealed both that she had been sexually assaulted as a child and that in the wake of the "Me Too" movement, her son had been accused of placing a young girl's hand on his groin many years before when he was 12 years old. Juror 25's son was charged with a crime. On advice of counsel, her son pleaded guilty, even though he denied the accusation.

During both the individual and panel voir dires, defense counsel explored whether juror 25's personal experiences would prevent her from being fair. Juror

---

[1] The petitioner is listed as Tesfasilasye-Goitom on our docket. However, the petitioner does not use a hyphen in his own briefing. We follow the spelling of his own name in this opinion.

2

*State v. Tesfasilasye*, No. 100166-5

25's answers indicated she would be a fair juror. She noted she was a nurse with 15 years of experience, had worked at a nursing home as a sexual assault investigator, understood allegations of sexual assault are common in caregiver settings, and she believed she could be objective and professional. She indicated she could keep her personal experiences separate from the case at hand. While juror 25 never used the words "I can be fair" in her responses, her responses indicated she would be fair.

The State also asked panel members whether any of them, their close friends, or their relatives had been accused of a crime. Juror 25 reminded them of the conversation they had in private and explained, "I mean, not just from [my personal] experience but just overall, you know, there are definite circumstances where laws get in the way to having a fair outcome or justice being done." 1 Jury Trial Proceedings (JTP) at 249.

The State asked juror 25 if she could follow a law that was unfair and how she would react if she believed the law got in the way of what she thought was just. Juror 25 replied, "Sentencing is left up to the judge, so that's—I have nothing to do with that, I believe. As far as whether would I give an innocent or guilty verdict, that would be dependent on the circumstances and evidence that's presented. So it's two separate issues." 1 JTP at 250.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Tesfasilasye*, No. 100166-5

When asked if she could vote for a guilty verdict even if she believed the law was wrong, Juror 25 responded:

> I think it's difficult, but at the same time, you know, you have to separate out the fact that, yes, there's that law that may be, quote-unquote, flawed for that given situation, but at the same time if the crime has been committed and there's proof, evidence beyond a reasonable doubt, that it did really occur, then we have no choice. I have no choice but to find that situation or person guilty or whatever the situation is.

1 JTP at 250-51.

The conversation shifted to whether people tended to believe women more than men in the context of sexual assault allegations and whether the prospective jurors had experience working with people with disabilities. Juror 25 said:

> I think what you really need to focus on in this case right now involving this man and the victim, and I think given—for me personally because of my work and because of also my personal experiences, especially because of my work, you know, having worked a lot with this type of allegation and having to stay very neutral and objective because you need to get through the investigation, and so for me personally, you know, when I first read that statement about this case, my first thought was in the hope that the victim is safe.
>
> My second thought is I hope that, you know, the one that's being accused is given a fair—hopefully, a fair trial.

1 JTP at 288.

The State sought to use a peremptory strike against juror 25. Tesfasilasye raised a GR 37 objection. The State denied it was striking juror 25 because she was an Asian woman and called the court's attention to the fact it was not seeking to

4

*State v. Tesfasilasye*, No. 100166-5

strike the other Asian woman in the panel. Instead, the State contended it wanted to

strike juror 25 because it was concerned she could not be fair and impartial due to

her traumatic personal experience with her son's sexual assault conviction and

what it characterized as an inability to fully consider both sides.[2]

The State explained:

> She also said that, you know, her—the person in that dynamic
> [referring to her son's sexual assault charge] led to something that he did not
> do and it concerns the State about her perspective of the criminal justice
> system, and it also concerns the State about the inference that she might
> make about this defendant and his motivations for taking the case to trial. So
> all of those reasons I think are race-neutral . . . reasons and the State has met
> its burden.

1 JTP at 365-66.

Defense counsel pushed back: "GR 37 is very clear that a reason for having

a close relationship with someone who has been stopped, arrested, or convicted of

a crime is presumptively invalid." 1 JTP at 366. Counsel elaborated:

> Juror No. 25 is an immigrant. She was born in Korea. She's someone
> who a male in her family had an interaction where he was accused of a
> crime, and I do believe that that rule addresses that, and outside of that the
> statements that she made do fall in line with presumption [o]f innocence.

1 JTP at 367.

---

[2] The record does not support the conclusion that juror 25 was not able to be fair to both sides. If
anything, the record suggests juror 25 was uniquely positioned to be able to empathize with and
be fair to both the defendant and the complaining witness.

*State v. Tesfasilasye*, No. 100166-5

The trial judge initially concluded, erroneously, that juror 25 "absolutely was challengeable potentially on a cause basis, notwithstanding GR 37." 1 JTP at 368. The trial judge also concluded the State had overcome the presumption in GR 37 because of juror 25's statements that her son was treated unfairly. The trial judge explained:

> [E]verything that she said that I heard told me that she was not a believer in the system. On the other hand, she did have a close relationship with someone who's been convicted of a crime, although I think the presumption can be overcome. It's presumptively invalid, it's not invalid. We're not allowed to rely on conduct. That would have entered my consideration as well, simply how she was—well, yeah, I can't consider that.

> I believe that the reasons given by the State are race-neutral. I don't believe that the State is wanting to excuse this juror because of her race. We have another Asian juror in the panel, if not more, in the venire, and I believe that presumption [o]f invalidity has been overcome based on the circumstances of her experience and how it has left her feeling about sentences.

1 JTP at 373. Upon further reflection, the judge then walked that back, saying, "If you take [her statements] at face value, there's nothing she said that was anti-justice system, anti-victim, anti-police, or anti-anything else. It's just—it's more of a gut that you get with her that she's not—she wasn't happy with what happened with her son." 1 JTP at 373-74.

The trial court overruled the GR 37 objection and granted the peremptory challenge.

*State v. Tesfasilasye*, No. 100166-5

The State also brought a peremptory challenge against juror 3 who first spoke up when another juror expressed concerns about convicting a defendant of a victimless crime. Juror 3 said:

> I'm a person from an immigrant family. I'm clear that there's institutional racism, so I'm prevalent to it, and that's just something that I would have to manage in my brain, you know, when going through—just like anyone else, I guess, would have to manage whatever type of bias that they have. But, I don't know, brass tacks if it came down to it, if someone was going to go away for 20 years for something silly like a victimless thing, I probably would not send them despite factual evidence.

1 JTP at 254.

The State asked what juror 3 would do if the evidence led to a guilty verdict. Juror 3 responded:

> I would definitely have a very difficult time. I mean, like I don't know what the judge is going to sentence the person, so, you know, factor that into play, I would most likely be a lot more fair, obviously. I'm just bringing it up because I'm prevalent to it, you know, as a brown man . . .
> . . . .
> . . . in the criminal justice system. I'm just prevalent to it.

1 JTP at 255. The prosecutor then asked if juror 3's position would change if a crime was more than a simple drug offense. Juror 3 responded that there was a difference, particularly when a victim was involved. He said:

> Then, you know, not following the law it would be a dangerous thing, I think, right, if all the facts were there, then if I didn't say yes, that person is guilty, then there's a possibility of that person, you know, engaging in that type of behavior again. I mean, I don't know, it becomes a moral imperative at that point.

7

*State v. Tesfasilasye*, No. 100166-5

1 JTP at 255-56. Juror 3 said crimes against victims were different and dangerous.

Defense counsel asked the panel members whether they were more likely to believe the woman in sexual assault cases. Juror 15 said she would start by believing the woman, not the presumption of innocence. She was then excused for cause. Defense counsel asked if anyone else felt the same way. Juror 3 raised his hand along with several other jurors. Juror 3 said that his initial gut reaction was to feel bad for the accused because a sexual assault accusation can change a person's life. Juror 3 explained that while some jurors might have sympathy for the victim, he was thinking about the accused "because I know that in many people's eyes he's already guilty." 1 JTP at 315.

The State followed up and this exchange ensued:

> [Prosecutor]: [A]re you going to make me provide more evidence than beyond a reasonable doubt? Are you going to hold me to a beyond any doubt standard because of those experiences . . . ?
>
> [Juror 3]: No, I mean, I can stay true to the reasonable part of it. I know it's a gray area.

1 JTP at 316.

The State asked whether he understood that his role as a juror was different than that of an eyewitness and asked what type of evidence he would require to be convinced.

*State v. Tesfasilasye*, No. 100166-5

[Prosecutor]: Because you weren't at the place where the allegations are said to have taken place, right? So if the allegations in this case are that, you know, somebody was sexually assaulted downtown Seattle, well, you weren't there, otherwise, you'd be a witness, not a juror, right?

[Juror 3]: Yeah.

[Prosecutor]: And so you're going to have to sort of rely on your own judgment to a great extent to make a decision in this case. And my question to you . . . is, are you going to hold the State to a higher burden than what is required? Does that makes sense?

[Juror 3]: Am I going to hold the State to a higher burden?

[Prosecutor]: Yeah.

[Juror 3]: I'm not sure how to answer that.

[Prosecutor]: . . . [W]hat would it take you to convince you in this case beyond a reasonable doubt in a case like this, like what kind of evidence would you want to see?

[Juror 3]: Um, eyewitness—this is going to sound stupid, I don't know, DNA [(deoxyribonucleic acid)] samples, I don't know, whatever . . . evidence is the evidence of that day that, you know, provides a yes or a no accurately, you know. I don't watch CSI [(CSI: Crime Scene Investigation) television program], I'm not sure what types of things, but it can't be like hearsay, like, oh, yeah, I saw him walking out of the room, maybe. You know what I mean? It's got to be concrete.

[Prosecutor]: Well, you just said eyewitnesses and then you said it can't be somebody who says I just saw him walk out of the room. So what do you mean by eyewitnesses, I guess?

[Juror 3]: Like someone who saw the person commit the crime or saw the person, you know, with the candlestick walk out at 11:02 exactly at the

9

*State v. Tesfasilasye*, No. 100166-5

time that the person screamed, oh, rape, you know, like that's okay, like that's pretty good.

1 JTP at 316.

Juror 7 also said he would need evidence in order to convict someone of rape beyond a reasonable doubt. When the State asked him what kind of evidence he said, "Like one of the other jurors suggested, maybe some DNA, I don't know, I'd need to see all of the evidence, all of the circumstances." 1 JTP at 320. The State did not make a peremptory strike against juror 7.

But, the State did make a peremptory strike against juror 3. Tesfasilasye objected under GR 37. The State contended it was striking juror 3 because of his need for "concrete evidence." The State explained:

> [Juror 3's] answer to me was so unreasonable about there needing to be eyewitnesses to a rape case. I just think he was so shortsighted about the type of case this is and the type of evidence that he would require from the State that even though at the end he pretty much polish[ed] the answer by saying, oh, yes, of course, it would just be reasonable doubt, it would be a matter of defining reasonable doubt and I don't think there's really, truly any evidence that the State could provide to prove the case beyond a reasonable doubt to that man.
>
> It was clear to me that he wanted an eyewitness, but that he didn't want just an eyewitness that was like walking away because that would be hearsay, like he had this like set of evidence that he expects from the State that would be frankly impossible to find in most legitimate otherwise strong sex offense cases.

10

*State v. Tesfasilasye*, No. 100166-5

> And so for that reason I do think that the State does have—I could have actually moved at that time I believe to strike him, but I wanted to keep that conversation going, so I saved it as a peremptory challenge.

1 JTP at 388. The court said, "[T]he impression I got from him was he could not convict on a circumstantial evidence case. He wants an eyewitness, he wants DNA, he wants somebody who screams 'Rape,' that's what I heard him say." 1 JTP at 391.

> The court granted the peremptory challenge and explained:

> I am going to allow the peremptory challenge in this case. I do not believe an objective observer having watched this gentleman and having him volunteer, not being led through, but volunteering all the things that he would require for a conviction *would* think that this was a race-based challenge. So I'm going to allow the peremptory.

1 JTP at 394 (emphasis added). The trial judge's oral ruling was not based on whether a reasonable juror *could* view race as a factor as required by GR 37.

The jury found Tesfasilasye guilty of third degree rape. He was sentenced to 12 months in jail. Tesfasilasye appealed, alleging, among other things, that an objective observer could have viewed race as a factor for striking Juror 25 and juror 3 as prohibited by GR 37. The Court of Appeals affirmed Tesfasilasye's conviction, and we granted review of only the GR 37 issues.

11

*State v. Tesfasilasye*, No. 100166-5

ANALYSIS

The parties disagree on the appropriate standard of review. Tesfasilasye contends review is de novo. Pet'r's Suppl. Br. at 11 (citing *State v. Lahman*, 17 Wn. App. 2d 925, 935, 488 P.3d 881 (2021); *Jefferson*, 192 Wn.2d at 249-50). The State agrees the trial court's application of a GR 37 is reviewed de novo, but it asks us to defer to the trial court's informal factual findings. The State also urges us to articulate the quantum of evidence required to rebut the presumptively invalid reasons to dismiss a juror listed in GR 37(h). Tesfasilasye does not address this directly.

While we have not directly addressed this question, most courts have effectively applied de novo review because the appellate court "stand[s] in the same position as does the trial court" in determining whether an objective observer could conclude that race was a factor in the peremptory strike. *Jefferson*, 192 Wn.2d at 250; *e.g.*, *State v. Listoe*, 15 Wn. App. 2d 308, 321, 475 P.3d 534 (2020); *State v. Omar*, 12 Wn. App. 2d 747, 751, 460 P.3d 225, *review denied*, 196 Wn.2d 1016 (2020); *Lahman,* 17 Wn. App. 2d at 935; *State v. Orozco*, 19 Wn. App. 2d 367, 374, 496 P.3d 1215 (2021). We agree in this case. Here, there were no actual findings of fact and none of the trial court's determinations apparently depended on an assessment of credibility. However, we leave further refinement of the

12

*State v. Tesfasilasye*, No. 100166-5

standard of review open for a case that squarely presents the question based on a

well-developed record.

Our constitutions require a fair and impartial jury. U.S. CONST. amend. VI;

WASH. CONST. art. I, § 22. The parties and the jurors themselves have the right to a

trial process free from discrimination. *Powers v. Ohio*, 499 U.S. 400, 409, 111 S.

Ct. 1364, 113 L. Ed. 2d 411 (1991); *State v. Davis*, 141 Wn.2d 798, 824-25, 10

P.3d 977 (2000). The constitutions require nothing else, but tradition, statutes and

court rules created peremptory challenges. *See Ross v. Oklahoma*, 487 U.S. 81, 88,

108 S. Ct. 2273, 101 L. Ed. 2d 80 (1988). Parties may use peremptory challenges

to strike a limited number of otherwise qualified jurors from the venire without

providing a reason. *See* RCW 4.44.130, .140; CrR 6.4(e). These challenges

however have a history of being used based largely or entirely on racial stereotypes

or generalizations. *State v. Saintcalle*, 178 Wn.2d 34, 43, 309 P.3d 326 (2013)

(lead opinion of Wiggins, J.), 75, 80-81 (González, J., concurring), 118 (Chambers,

J. Pro Tem., dissenting), *abrogated on other grounds by City of Seattle v. Erickson*,

188 Wn.2d 721, 398 P.3d 1124 (2017). The protections under *Batson*[3] were not

robust enough to effectively combat racial discrimination during jury selection.

*Erickson*, 188 Wn.2d at 723. Under the *Batson* framework "it [is] . . . difficult for

defendants to prove discrimination even where it almost certainly exists" because it

---

[3] *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

13

*State v. Tesfasilasye*, No. 100166-5

requires a trial judge to find a purposeful discriminatory purpose without considering systemic and unconscious racial bias. *Saintcalle*, 178 Wn.2d at 46.

GR 37 was an attempt to address the shortcomings of *Batson*. Stakeholders worked on it for several years, receiving comments and providing recommendations for this court to adopt. PROPOSED NEW GR 37—JURY SELECTION WORKGROUP, FINAL REPORT (2018) (FINAL REPORT). This court adopted GR 37 in April 2018. Order No. 25700-A-1221, *In re Proposed New Rule General Rule 37 — Jury Selection* (Wash. Apr. 5, 2018).

Under GR 37, if "an objective observer could view race or ethnicity as a factor in the use of [a] peremptory challenge, then the peremptory challenge shall be denied." GR 37(e). During the rule-making process, one of the areas of disagreement was whether a judge should deny a peremptory challenge if an objective observer "could view" or "would view" race or ethnicity as a factor. FINAL REPORT at 6. If the standard was "could view," of course many more peremptory challenges would need to be denied than if the standard was "would view." Many stakeholders expressed concerns that the "would view" standard would be not be meaningfully different from the "purposeful discrimination" standard of *Batson*. FINAL REPORT, app. 2. We agreed with these advocates when we passed GR 37. The "would view" standard would have required judges "to endorse 'an accusation of deceit or racism' in order to sustain a challenge to a

14

peremptory strike." *Id.* (quoting *Saintcalle*, 178 Wn.2d at 53). Under the "could view" standard, a judge is required to deny a peremptory challenge when the effect is discriminatory regardless of whether there was discriminatory purpose. *Id*. The "could view" standard is also more likely to prevent peremptory dismissals of jurors based on the unconscious or implicit biases of lawyers. *See id.*

Under this rule, an "objective observer" is someone who "is aware that implicit, institutional, and unconscious biases, in addition to purposeful discrimination, have resulted in the unfair exclusion of potential jurors in Washington State." GR 37(f). GR 37 provides factors for courts to consider in making its determination. Some of these factors include accessing the number of questions asked of a juror, how many times that juror was asked questions, whether the party exercising the peremptory challenge asked more questions of one particular juror, or whether a reason might be disproportionately associated with a race or ethnicity. GR 37(g). We reiterate that this is not a checklist for trial courts to cross off but, instead, factors to be considered in making a determination.

GR 37 also lists seven presumptively invalid justifications for a peremptory challenge. GR 37(h). These seven presumptively invalid reasons are highly correlated "with race and have been used historically to exclude people of color from jury service." FINAL REPORT, app. 2. These justifications are not accurate indicators of a person's fitness to server as a juror. *Id*. Our Black, Indigenous, and

other People of Color communities are arrested, searched, and charged at significantly higher rates than White communities, and therefore are more likely to know someone who has a close relationship with someone who has had contact with the criminal legal system. *Id*. (citing RSCH. WORKING GRP., TASK FORCE ON RACE & CRIM. JUST. SYS., PRELIMINARY REPORT ON RACE AND WASHINGTON'S CRIMINAL JUSTICE SYSTEM 7 (Mar. 2011)); *see also* RSCH. WORKING GRP., TASK FORCE 2.0: RACE & CRIM. JUST. SYS., RACE AND WASHINGTON'S CRIMINAL JUSTICE SYSTEM: 2021 REPORT TO THE WASHINGTON SUPREME COURT 2 (2021), https://digitalcommons.law.seattleu.edu/korematsu_center/116 (acknowledging that the 2011 report failed to examine or report on disproportionalities experienced by Indigenous people and providing a more extensive report).

JUROR 25

At issue in the dismissal of juror 25 is the presumptively invalid justification of "having a close relationship with people who have been stopped, arrested, or convicted of a crime." GR 37(h)(iii). Tesfasilasye argues the State's successful peremptory challenge to juror 25, an immigrant woman from Korea, is reversible error because an objective observer could conclude race was a factor. One of the State's proffered reasons for the strike—that the juror might be biased because her son had, in her view, been treated unfairly by the criminal legal system—is presumptively invalid. GR 37(h)(iii). By any standard, the State did not overcome

16

*State v. Tesfasilasye*, No. 100166-5

the presumption of invalidity. It simply used different language to explain why it was concerned about her son's experience. The State's other reason—that juror 25 could not be fair to both sides—was simply not established in this record despite the judge's erroneous initial conclusion that there may have been enough for a cause challenge. If a juror can be excused for cause, they should be excused for cause. Biased jurors simply should not be seated. But GR 37 is qualitatively different and is aimed at curing a different problem. It is not an alternate way to dismiss jurors for cause. Whether the existence of cause is a basis for overcoming a GR 37 objection is an interesting question but not one well presented here. On this record, this juror could not have been dismissed for cause.

The record shows that juror 25 repeatedly indicated she could be fair and impartial. She understood what her role as a juror was and was willing to listen to the evidence before providing a verdict. Juror 25 shared her own experience as a victim of sexual assault. Her voir dire examination showed deep and appropriate care for both the need of the victim for safety and the need of the accused for a fair trial. She had experience in being objective in sexual assault investigations, which she had done professionally. While juror 25 did express frustration with the way her son was treated, it is unrealistic for the State to expect her not to have feelings about what happened. Nothing in this record suggests the trial court doubted juror 25's credibility or her voir dire testimony.

17

*State v. Tesfasilasye*, No. 100166-5

The State did not seek to strike other jurors who shared similar personal experiences as juror 25, even jurors who were more equivocal in their assurances that they could be fair. Juror 2, for example, shared she was abused by her stepparent as a child and explained, "I'm probably unfortunately not able to be completely unbiased because of my experiences, but I think I would do my best to be fair and objective." 1 JTP at 114. The State did not attempt to strike juror 2. As another example, juror 37 also indicated she would have strong feelings about this case because her mother and cousin had been raped. Juror 37 also acknowledged wanting to take the trial seriously and wanting to be able to consider the case. However, she also said, "I do think I could do that and at the same time I feel like I would be emotional and I don't feel like that has a place in this thing." 1 JTP at 294. The State did not attempt to strike juror 37.

An objective observer who is aware that implicit, institutional, and unconscious biases have resulted in the unfair exclusion of potential jurors of our state could view race as a factor for striking juror 25. The trial court should have denied the peremptory challenge.

JUROR 3

Tesfasilasye argues juror 3 was improperly stricken from the jury in violation of GR 37 because the State misrepresented his remarks and because the State did not request to strike other jurors who provided similar answers. Pet'r's

18

Suppl. Br. at 29. The State argues it struck juror 3 because he would "harbor unreasonable doubts" without concrete evidence. Suppl. Br. of Resp't at 26. However, juror 3 said that if provided with the definition of reasonable doubt, he would follow the court's instruction, apply the definition, and render a guilty verdict if he believed the State's evidence met the definition. 1 JTP at 342.

Tesfasilasye argues the State engaged in purposeful discrimination under *Batson* because it misrepresented juror 3's statements when it said juror 3 needed an eyewitness in order to convict. Tesfasilasye is correct that that does not accurately reflect what juror 3 said. In listing what kind of evidence he would like to see from the State to be convinced beyond a reasonable doubt, he listed various examples, including eyewitnesses and DNA samples. This conversation was in the context of whether juror 3 would hold the State to a higher burden of proof. It is not clear that juror 3 fully understood what the burden of proof was at that point. Based on the limited information he had at that point, his comments are hardly disqualifying. *See generally State v. Bennett*, 161 Wn.2d 303, 165 P.3d 1241 (2007) (discussing different burden of proof instructions and the difficulty in crafting an instruction). Further, juror 7 made similar remarks about the need to have the whole picture before being able to reach a conviction. The State did not attempt to strike juror 7.

19

*State v. Tesfasilasye*, No. 100166-5

The court denied the GR 37 challenge and concluded that it did not believe an objective observer "would think" that this was a race based challenge. GR 37 is clear, the court's determination should be based on whether an objective observer "could" view race as a factor, not whether it would. We therefore reverse the trial court because an objective observer could view race as a factor for striking juror 3, a Latino immigrant man. The trial court should have denied the peremptory challenge.

CONCLUSION

We hold that under these facts, an objective observer could view race as a factor for striking both juror 25 and juror 3. Tesfasilasye asks this court to reverse his conviction. The State does not dispute that the remedy for a GR 37 violation is reversal. Accordingly, we reverse the Court of Appeals and remand for a new trial.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Tesfasilasye*, No. 100166-5

González, C.J.

WE CONCUR:

Johnson, J.

Gordon McCloud, J.

Madsen, J.

Yu, J.

Owens, J.

Whitener, J.

Stephens, J.

Toynbee, J.P.T.